STATE OF TEXAS EX REL. J. N. BROWN ET AL. V. BRYAN CALLAGHAN,
MAYOR OF SAN ANTONIO.

No. 603.—Decided December 6, 1897.

1. **Certified Question.**

See opinion for certified questions held not to be a certificate of the whole case nor subject to dismissal as such. (P. 314.)

2. **Same.**

It is no objection to considering a certified question that there are other questions disclosed by the record which must be determined before a decision of the point certified becomes necessary. It must be presumed when a question is certified that the Court of Civil Appeals regard it as necessary to be decided in the disposition of the case. (P. 315.)

3. **Public Schools—Election to Determine Control—City Specially Incorporated.**

Reviewing the legislation on the subject: Rev. Stats. (1879), arts. 3781, 3782; Act, April 3, 1879, secs. 1, 2, 3; (Laws, 1879, p. 76); Rev. Stats. (1895), arts. 4004, 4005, 4006, 4007, 4018; Laws, 1883, p. 112. Held, that there is no general law authorizing the mayor of the City of San Antonio,—which was incorporated under a special charter and had in 1876 assumed control of its public schools without providing for trustees, —to now order an election to determine whether such schools shall be managed by a board of trustees elected by the people. (Pp. 315-317.)

QUESTION CERTIFIED by Court of Civil Appeals for Fourth District, in an appeal from Bexar County.

*C. A. Keller* and *Mason Williams*, for appellant.—The court erred in denying the writ of mandamus herein prayed for, for the reason that the law is that the "mayor of said city or town shall, upon the written application of not less than fifty of the qualified electors of such city or town, order, within twenty days of such application, an election" to decide by a majority of the votes cast whether the public free schools shall be under the control of the board of trustees, or of the council or board of aldermen; and it is thus the plain duty of said mayor to order said election, and no discretion is given him, and upon his refusal to so order such election, the writ of mandamus will lie.

The court erred in its conclusions of law in holding that there is "no provision in the statute authorizing an election to determine whether or not such control, already determined, shall be changed from the city council to a board of trustees," for the reason that the statute expressly provides that such an election to determine in whose hands the control of the school is to be vested, may be held every two years.

The court erred in refusing the mandamus herein applied for, because the law is plain and mandatory that the mayor, upon the application of not less than fifty of the qualified electors shall order an election to see whether the schools shall be controlled by the city council or board of trustees, and in refusing to do so said mayor was violating the law and denying to the relators rights given them by statute, and the court should have enforced such rights by the writ of mandamus.

We submit the above assignments as propositions and make the additional one that under chapter 16, title 86, of the Revised Statutes, it is the plain, ministerial duty of the mayor to order an election, upon the application of the necessary number of electors, to determine whether or not the schools of the city shall be under the control of trustees or the city council. Rev. Stats., arts. 4004, 4005, 4006; Merrill on Mandamus, sec. 29, et seq.; High on Extr. Leg. Rem., sec. 427.

*John A. Green, Sr.*, for appellee.

GAINES, CHIEF JUSTICE.—The following question has been certified and submitted for our determination by the Court of Civil Appeals for the Fourth Supreme Judicial District:

"The city council of the city of San Antonio, a municipal corporation, on the 19th day of September, 1876, duly submitted to a vote of the majority of the property tax payers of said city, the proposition as to whether said city should assume control of the public free schools within its limits, and at an election duly held on the 16th day of October, 1876, upon the question submitted, it was decided by a vote of the majority of the property tax payers of said city that it should assume control of the public free schools within its limits. Immediately thereafter the city of San Antonio assumed exclusive control of all the public free schools within its limits, and has continued to exercise such control over them ever since.

"Since said election no proposition involving the control of the public free schools of the city has been submitted to the electors of said city.

"On the 15th day of April, 1897, the following application in writing, signed by more than fifty of the qualified electors of the city of San Antonio, was made and presented to the Hon. Bryan Callaghan, Mayor of said City, to-wit:—

'To the Honorable Bryan Callaghan,

     'Mayor of the City of San Antonio.

'Sir:—Under the Statute Laws of Texas the citizens of this City have a right to determine, by a vote, whether or not the public schools of this City shall be managed by a Board of Trustees to be elected by the people. We, therefore, respectfully petition you, as Mayor of the City of San Antonio, to order an election at an early day, in order that the voters of this City may determine whether or not the public schools of the City of San Antonio shall be placed under the control of a Board of Trustees, as provided by the statute laws of this State.' "

QUESTION—"Under these facts was it the legal duty of Bryan Callaghan, as Mayor of the City of San Antonio, to order the election applied for?"

The question has been submitted together with a motion to dismiss.

We are of opinion that the motion should be overruled. It is not a certificate of the whole case as in the Kelley-Goodfellow Shoe Company

against Insurance Company (87 Texas, 112). Nor is it a sound objection that there are other questions in the case which must be determined before a decision of the point certified becomes necessary. The statute contemplates, that when a question arises in the Court of Civil Appeals which that court may deem difficult and necessary to be decided in the disposition of the case, it may be certified for determination to this court; and when a question is certified, we must indulge the presumption that the Court of Civil Appeals so regard it. If the "very question" is not certified, neither party is injured, for after the final disposition of the case in the Court of Civil Appeals he may apply to this court for a writ of error and have "the very question" decided in the light of the entire record. So in his application, he may show that the determination of the question was not necessary, if in truth there were other questions, the decision of which ought to have determined the disposition of the case in his favor. The motion is overruled.

In the briefs of counsel the various statutes enacted during the last twenty years, which bear upon the question of the control by the incorporated cities and towns in this State of the public free schools within their limits, have been elaborately discussed. But in determining the question submitted, we have not found it necessary to review at any great length the history of these laws. The statutes upon the subject indicate that the progressive tendency of the legislation has been towards promoting the acquisition of the control of their public schools by the incorporated towns and cities of the State and to leave it optional with the people of the respective municipalities whether the schools shall be under the management of the governing body of the corporation or under a board of trustees. But we have found no statute which undertakes to make a general law covering the whole subject and applicable to all municipal incorporations in the State.

The Revised Statutes of 1879 contained the following articles:

"Art. 3781. All cities and towns which have heretofore under the act of May 2, 1875, or any subsequent law, assumed control of the public free schools within their limits, and have continued to exercise the same until the present time, or may hereafter determine so to do by a majority vote of the property taxpayers of said city or town voting at an election held for that purpose, may have exclusive control of the public free schools within their limits.

"Art. 3782. The election required to be held by the preceding article, shall be ordered by the city or town council upon the petition of twenty property taxpayers, and shall be held and conducted, and the returns canvassed, and the result declared as other elections."

The act of April 3, 1879, contained among others not necessary to mention, the following provisions:

"Section 1. That any city or town in this State may acquire the exclusive control of the public free schools within its limits.

"Sec. 2. The mayor of said city or town shall, upon the written application of not less than fifty of the qualified electors of such city

or town, order, within twenty days of such application, an election by the qualified electors of such city or town, to be conducted as other municipal elections, to decide by a majority of the votes cast by the qualified electors of such city or town at such election, whether such city or town shall acquire the exclusive control of any or all of the public free schools and institutions of learning within its limits, and whether the same shall be under the control of a board of trustees as hereinafter mentioned, or of the council or board of aldermen of such city or town.

"Sec. 3.   If, at such election, it shall be decided that such city or town has acquired the exclusive control of said public free schools and institutions of learning, and that the same shall be under the management of a board of trustees, then the mayor of such city or town shall, within ten days from the ascertainment of such result, order an election, to be conducted as other municipal elections, by the qualified electors of such city or town, of six trustees, to take charge of and manage said public free schools and institutions of learning.   The six persons receiving the largest number of votes cast at such election, shall, thereupon, become such trustees, and shall hold their offices for four years; provided, that at the first election, held under the provisions of this act, the trustees receiving the smallest majorities shall only hold their offices for two years, and at the end of every two years thereafter there shall be elected, in like manner, three trustees.   Any vacancy, from any cause whatever, among said trustees, to be filled by an election as herein provided for, for the unexpired term of such trustees; and, provided further, that said trustees may continue to act until their successors may have qualified."   Laws 1879, p. 76.

In the Revised Statutes of 1895, all those provisions are incorporated in precisely the same language, except article 3782 of the Revised Statutes of 1879, which was probably thought to be repealed by the second section of the act of 1879.   Rev. Stat. 1895, articles 4004, 4005, 4006 and 4007.   Article 4006, which is section 2 of the act of April 3, 1879, is the only general law which we have found which authorizes any of the incorporated towns and cities of this state to hold an election to determine whether the free schools within their respective limits shall be under the control of a board of trustees or "of the council or board of aldermen of such city or town."   And we are of opinion the true construction of this provision is not difficult to determine.   It is apparent that article 4005 applies only to such cities and towns as had not acquired control of their schools; for certainly the Legislature could not have intended to confer upon the towns and cities of the State which had already assumed control of their schools, the power to acquire that control.   Article 4006 does not require the mayor of every city or town in the State to order an election upon presentation of a proper petition.   The language is "the mayor of said city or town," and means, doubtless, the mayor of the city or town mentioned in article 4005.   This becomes obvious by referring to the original act of April 3, 1879, for that

was the only preceding provision in that act. It seems to us therefore that the purpose of the Legislature was to make provision for such towns and cities as had not assumed control of their public free schools, and to direct that they might do so by holding an election to determine at the same time two questions: 1. Shall the city or town take control of its schools? 2. If so, shall the schools be under the management of a board of trustees? It does not authorize either question to be submitted separately. It must be a dual election. It is clear, therefore, even if the words "the mayor of said city or town" had not already made it clear, that the provisions could not apply to any town or city which had already assumed control of its schools. It was the evident policy of the Legislature to have the question of trustees settled by the same election at which the question of control was determined, and to leave untouched the subject of trustees as to all cities and towns which were already in lawful exercise of control over their schools. If it should be asked why in providing a mode by which the question of trustees or no trustees could be decided as to cities which might subsequently acquire the right of control over their schools, did the Legislature omit to make a like provision for those which had already assumed such control, it may be difficult to give a satisfactory answer. But it is unimportant whether a good reason may be assigned for their action or not, since it is clear that if they contemplated making such provision they have not done so. The Eighteenth Legislature, in 1883, doubtless seeing that there was no law in force which authorized cities or towns which had already taken control of their schools to place them under the management of trustees, enacted the following provision: "That the city council of every city or town of one thousand inhabitants or more, incorporated under the general law, that has or shall assume control of its public free schools, may appoint six persons of good moral character and qualified voters of such city or town, as a board of trustees for such schools of which board the mayor shall be ex-officio chairman." Laws 1883, p. 112. This is now article 4018 of our present Revised Statutes. So that articles 4006 and 4018, taken together, provide a mode by which every city or town in the State except those acting under special charters which had already acquired control of their schools, may determine whether the management shall be by a board of trustees or not,—the one by appointment, the other by election. It was probably deemed best to leave the matter for special legislation as to those cities which were acting under special charters.

Since San Antonio had already assumed control of its public free schools when the petition for the election was presented to the mayor, it follows that he had no power to order it. The question is therefore answered in the negative; and our opinion will be so certified.